1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Apr 22, 2021

SEAN F. McAVOY, CLERK

4

5

6

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

| | |
|---|---|
| ADAM P., <br><br>                 Plaintiff, <br><br>    v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>              Defendant. | NO:  2:20-CV-172-RMP <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

13

14

15

16

17

18

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Adam P. [1], ECF No. 16, and the Commissioner of Social Security ("Commissioner"), ECF No. 18.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claim for supplemental security income under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 16 at 1.  Having reviewed the parties' motions and the

19

20

21

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

administrative record, the Court is fully informed.  The Court grants summary

judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff filed his initial claim for disability benefits and supplemental security

income on April 6, 2015, alleging that he was unable to function and/or work due to

cerebral palsy as of his birth date in 1986.  Administrative Record ("AR") 72.[2]  In

addition to cerebral palsy, Plaintiff asserts that he is unable to sustain competitive

employment on a regular and continuing basis due to a combination of impairments,

including unspecified cognitive disorder, unspecified depressive disorder,

unspecified personality disorder, generalized anxiety disorder, borderline intellectual

functioning, conduct disorder, and flat feet.  Plaintiff's date last insured is June 30,

2010.  AR 86.  The application was denied initially and upon reconsideration, and

Plaintiff requested a hearing.  Administrative Law Judge ("ALJ") Jesse Shumway

held a hearing on July 3, 2019, in Spokane, Washington.  Plaintiff was 33 years old

at the time of the hearing, and appeared and testified at the hearing, represented by

counsel Chad Hatfield.  Medical expert Lynne Jahnke, M.D. and vocational expert

Fred Cutler, M.A. also testified at the hearing.  At the hearing, Plaintiff amended his

---

[2] The AR is filed at ECF No. 13.

alleged disability onset date to March 8, 2012, when Plaintiff was 26 years old.  AR

16.  As a result of the amended onset date coming after the date last insured of June

30, 2010, the ALJ dismissed Plaintiff's claim for disability insurance benefits and

proceeded only to evaluate Plaintiff's eligibility for supplemental security income.

AR 16.

### *ALJ's Decision*

On July 26, 2019, the ALJ issued an unfavorable decision. AR 16–30.

Applying the five-step evaluation process, Judge Shumway found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since

March 8, 2012, the amended alleged onset date.  AR 18.

**Step two:** Plaintiff had the following severe impairments that are

medically determinable and significantly limit his ability to perform

basic work activities: unspecified cognitive disorder, unspecified

depressive disorder, generalized anxiety disorder.  AR 18–19. The ALJ

found that the Plaintiff's "congenital pes planus (flat feet) bilaterally

with orthotic inserts as the treatment recommendation, a history of

patellar dislocation, and hyperlipidemia . . . caused only transient and

mild symptoms and limitations, are well controlled with treatment, did

not persist for twelve continuous months, do not have greater than a

minimal limitation on the claimant's physical or mental ability to

perform basic work activities, or are otherwise not adequately supported by the medical evidence of record." AR 19. Consequently, the ALJ concluded that Plaintiff's flat feet and the other two impairments recited above are "nonsevere at most." *Id.* The ALJ further found that cerebral palsy was a nonmedically determinable impairment because, as the testifying medical expert noted, "the longitudinal record contains no description of any physical problems related to cerebral palsy throughout the entire period at issue. AR 19 (citing record of a physical examination and review of medical history from January 2019). Likewise, the ALJ found the record supported only that borderline intellectual functioning and psychotic disorder were provisional diagnoses that were not confirmed by a subsequent provider or examiner and were not substantiated by "medical signs or laboratory findings," and were, therefore, not medically determinable. AR 20.

**Step three:** The ALJ concluded that Plaintiff's impairments, considered singly and in combination, did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 20.

1    **Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff

2    had the RFC to:

3    > perform a full range of work at all exertional levels, with the
     > following exceptions: he is limited to simple, routine tasks

4    > consistent with a reasoning level of two or less; and he is limited
     > to superficial contact with supervisors, co-workers, and the

5    > public.

6    AR 22.

7        In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements

8    concerning the intensity, persistence and limiting effects of his alleged symptoms

9    "are not entirely consistent with the medical evidence and other evidence in the

10   record." AR 22. The ALJ further found that Plaintiff's course of treatment "is also

11   in tension with his allegations." AR 23.

12       **Step four:** The ALJ found that Plaintiff had no relevant work.

13       **Step five:** After finding that Plaintiff has a high school education, is

14   able to communicate in English, and that "[t]ransferability of job skills

15   is not an issue because the claimant does not have past relevant work[,]"

16   the ALJ found that there are jobs that exist in significant numbers in the

17   national economy that Plaintiff could perform considering his age,

18   education, work experience, and RFC. AR 28–29. Specifically, the

19   ALJ recounted that the vocational expert identified hand packager,

20   agricultural produce packer, and cafeteria attendant as suitable jobs.

21

AR 29.  The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act at any time since the amended alleged onset date of March 8, 2012. AR 29.

## LEGAL STANDARD

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1  supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20,

2  22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

3      It is the role of the trier of fact, not the reviewing court, to resolve conflicts in

4  evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

5  interpretation, the court may not substitute its judgment for that of the

6  Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v.*

7  *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by

8  substantial evidence will still be set aside if the proper legal standards were not

9  applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health*

10  *and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial

11  evidence to support the administrative findings, or if there is conflicting evidence

12  that will support a finding of either disability or nondisability, the finding of the

13  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir.

14  1987).

15      **B. Definition of Disability**

16      The Social Security Act defines "disability" as the "inability to engage in any

17  substantial gainful activity by reason of any medically determinable physical or

18  mental impairment which can be expected to result in death or which has lasted or

19  can be expected to last for a continuous period of not less than 12 months."  42

20  U.S.C. §§ 423(d)(1)(A).  The Act also provides that a claimant shall be determined

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

to be under a disability only if his impairments are of such severity that the claimant

is not only unable to do his previous work, but cannot, considering the claimant's

age, education, and work experiences, engage in any other substantial gainful work

which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A). Thus, the

definition of disability consists of both medical and vocational components.  *Edlund*

*v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Step one

determines if he is engaged in substantial gainful activities.  If the claimant is

engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision

maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments,

the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which

compares the claimant's impairment with listed impairments acknowledged by the

Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past.  If the claimant can perform his previous work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering his residual functional capacity and age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs

1  exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722

2  F.2d 1496, 1498 (9th Cir. 1984).

3                                    **ISSUES ON APPEAL**

4      The parties' motions raise the following issues regarding the ALJ's decision:

5  1.  Did the ALJ improperly reject the medical opinions of Plaintiff's providers?

6  2.  Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?

7  3.  Did the ALJ err in his treatment of lay witness statements?

   4.  Did the ALJ fail to satisfy his Step Five burden?

8

9                                      **DISCUSSION**

10  ***Medical Opinions***

11      Plaintiff argues that the ALJ did not provide specific and legitimate reasons

12  for rejecting the opinions of Plaintiff's examiners or providers, John Arnold, PhD,

13  Holly Petaja, PhD, Deborah Wiser, ARNP, and Benjamin Salzman, MS, LMHC.

14      An ALJ must consider the acceptable medical source opinions of record and

15  assign weight to each.  20 C.F.R. §§ 404.1527(c), 416.927(c).  This responsibility

16  often involves resolving conflicts and ambiguities in the medical evidence.  *Reddick*

17  *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  To reject the contradicted opinion of a

18  treating or examining physician, the ALJ must provide specific and legitimate

19  reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). "An

20  ALJ can satisfy the substantial evidence requirement by setting out a detailed and

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Reddick*, 157 F.3d at 725).

An ALJ may discount an otherwise valid medical source opinion as overly conclusory, poorly supported by or inconsistent with the objective medical record, or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ provides clear and convincing reasons to discredit the symptom allegations. *See, e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020). However, the Ninth Circuit has stressed that,

> [t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology . . . [p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnosis will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal citations omitted); *see also Raicevic v. Saul*, 836 F. App'x 569, 569 (9th Cir. 2021) ("As we explained in *Buck*, clinical interviews and mental status evaluations are objective measures that 'cannot be discounted as a 'self-report.'") (internal quotation to *Buck* omitted). The Court addresses each provider in turn.

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1

        <u>Drs. Arnold and Petaja</u>

2          Psychologist Dr. Arnold examined Plaintiff on October 25, 2018, and

3    included in his report the clinical finding that Plaintiff experienced  symptoms of

4    "shallow-reactive mood, rage episodes 3-4x/month, abandonment issues, brief

5    dissociation/blackout angry x2" that affect Plaintiff's ability to work.  AR 589–91.

6    Dr. Arnold opined that Plaintiff had moderate to marked limitations related to basic

7    work activity.  AR 591.  Dr. Arnold further opined that vocational training or

8    services would minimize or eliminate Plaintiff's barriers to employment.  AR 592.

9          On October 31, 2018, non-examining psychologist Dr. Petaja reviewed Dr.

10   Arnold's report regarding Plaintiff's functional limitations and assessed the same

11   moderate and marked limitations related to work-related abilities.  AR 596–97.

12         Plaintiff argues that it was error for the ALJ to reject Dr. Arnold's opinion that

13   Plaintiff has several marked and moderate limitations in his mental functioning as

14   inconsistent with his own examination findings and inconsistent with the

15   longitudinal record.  ECF No. 16 at 11.

16         The Commissioner responds that the ALJ provided specific and legitimate

17   examples of inconsistencies in Dr. Arnold's opinions.  ECF No. 18 at 12.  For

18   example, the ALJ found that Dr. Arnold's opinion that Plaintiff is markedly limited

19   in his ability to learn new tasks is inconsistent with Dr. Arnold's findings that

20   Plaintiff "passed serial seven subtractions, had good abstract thought, and normal

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

insight and judgment." *Id.* (citing AR 26, 594).  The Commissioner also refers the Court to the ALJ's citation to objective findings from treating providers and examiners that supported that Plaintiff has a normal memory, attention span and concentration, and cognitive test results indicating a low average working memory, processing speed, and verbal comprehension. *Id.* (citing AR 20–22, 353, 365, 367, 374, 416, 423, 429, 432, 435, 437, 455, 458, 461, 479, 495, 508, and 512).  In addition, the Commissioner highlights that the ALJ noted that Dr. Arnold's opinion that Plaintiff has marked limitations in his ability to communicate and perform effectively and maintain behavior in a work setting is inconsistent with Dr. Arnold's findings that Plaintiff presented with a cooperative and engaged attitude, generally logical and progressive speech with some delays, normal thought content, and normal perception. *Id.* at 13 (citing AR 26, 593–94).

The ALJ noted that Dr. Arnold performed only a "basic" psychological examination and reviewed only one 2015 Washington State Department of Social and Health Services examination by another examiner before offering his opinions. AR 26.  The ALJ also found that Dr. Arnold's finding of marked limitation in Plaintiff's ability to learn new tasks was at odds with his findings that Plaintiff showed good ability for abstract thought and intact and normal insight and judgment.  AR 26.  The Court finds that the ALJ satisfied the requirement that he provide a detailed and thorough summary of the facts he relied on in giving little

1    weight to Dr. Arnold's opinion, and articulated specific and legitimate reasons for

2    doing so.  *See Lester*, 81 F.3d at 830–31; *Garrison*, 759 F.3d at 1012.

3        Dr. Wiser

4        Treating physician Dr. Wiser completed a medical report form regarding

5    Plaintiff's ability to perform daily work-related activities on June 10, 2019.  Dr.

6    Wiser checked the boxes finding several physical limitations in Plaintiff's functional

7    abilities.

8        Plaintiff argues that the ALJ erroneously rejected Dr. Wiser's opinions

9    because her opinions were consistent with "opinions from other improperly rejected

10   sources . . . ."  ECF No. 16 at 13.

11       The Commissioner responds that the ALJ provided valid reasons for assigning

12   Dr. Wiser's opinions "little weight."  ECF No. 18 at 14–15.  The Commissioner

13   offers that the ALJ was reasonable in noting that Dr. Wiser's assessment of

14   Plaintiff's physical limitations was the most restrictive in the record, but her own

15   physical examination of Plaintiff indicated that Plaintiff was not in acute distress and

16   had normal gait and station.  *Id.* at 15.

17       Having reviewed both Dr. Wiser's medical report and the ALJ's description of

18   it, the Court finds that the ALJ accurately portrayed Dr. Wiser's findings and the

19   apparent contradictions between some of those findings.  AR 25, 606–08.

20   Specifically, the ALJ noted that Dr. Wiser did not offer any meaningful explanation

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1   for her opinions regarding the degree of Plaintiff's limitations and described her own

2   physical examination of Plaintiff as "inconclusive." AR 25. The ALJ also found

3   that the record indicates that Dr. Wiser saw Plaintiff for a treatment visit only once,

4   in January 2019, and noted at that time that Plaintiff was stable and exhibited normal

5   gait, station, and neurological findings. AR 25 (citing AR 418–20). The Court notes

6   that Dr. Wiser's treatment notes from the January 2019 visit indicate that Plaintiff

7   also displayed normal mood and affect, as well as normal behavior, judgment, and

8   thought content. AR 420. Consequently, the ALJ gave specific and legitimate

9   reasons giving little weight to Dr. Wiser's medical report. *Lester v. Chater*, 81 F.3d

10   821, 830-31 (9th Cir. 1995). The Court finds no error on this basis.

11                     Mr. Salzman

12        Treating counselor Mr. Salzman completed a mental medical source statement

13   form for Plaintiff on June 19, 2019. AR 601–03. Mr. Salzman checked boxes

14   indicating a wide range of assessments, from "Not Significantly Limited" to

15   "Severely Limited." Mr. Salzman stated that in his opinion that Plaintiff was most

16   limited in his ability to complete a normal workday and was likely to miss four? or

17   more days of work per month. AR 601–03.

18        Judge Shumway found Mr. Salzman's opinions to be "not consistent with or

19   supported by the longitudinal evidence of record, including Mr. Salzman's very few

20   treatment notes." AR 27. The ALJ noted that Mr. Salzman saw Plaintiff for an

21

appointment in late March 2019 to create a treatment plan and then for one single counseling session in April 2019.  AR 27.

Plaintiff argues that Mr. Salzman's assessment of Plaintiff's limitations was not inconsistent with activities such as volunteering at an animal shelter, preparing a grill for meal preparation, and fixing a bicycle with the help of his father because none of these activities supports an ability to remain employed in a competitive work environment.  ECF No. 19 at 5–6.  Plaintiff also asserts that the ALJ's reasoning that Mr. Salzman's opinion was not based on a lengthy history of treating Plaintiff overlooked that Mr. Salzman was a provider at a clinic that Plaintiff visited frequently.  ECF No. 16 at 14.  Therefore, Plaintiff maintains that Mr. Salzman had access to Plaintiff's treatment notes at the clinic, and "Mr. Salzman's assessment that the claimant would miss four or more days of work is consistent with the claimant's pattern of repeated missed appointments at the clinic, which at one point resulted in him being discharged from services."  *Id.* at 14.

The Commissioner responds that ALJs may assign less weight to the opinions of mental health practitioners, such as Mr. Salzman, who are "other sources" under the Social Security regulations.  ECF No. 18 at 16.  The Commissioner argues that the ALJ gave sufficient, germane reasons to discount Mr. Salzman's opinions by explaining why they were unsupported by the longitudinal record, including Mr. Salzman's own sparse treatment notes.  ECF No. 18 at 17.

1    The Court agrees with the Commissioner that the ALJ gave sufficient, specific

2    reasons for discounting Mr. Salzman's opinions.  The ALJ reasoned that at the

3    single therapy session that Plaintiff attended with Mr. Salzman, Plaintiff reported

4    daily living activities including volunteering and meal preparation that undermined

5    the severity of the limitations that Mr. Salzman assessed approximately two months

6    later in his medical source statement.  AR 27.  There also are very limited records,

7    treatment notes, or explanation from Mr. Salzman to support the limitations that he

8    assessed for Plaintiff.  *See* AR 26, 601–03.  Even if there are other explanations that

9    could be drawn from the record for why Mr. Salzman opined that Plaintiff would

10    miss four or more days per work each month, such as that Plaintiff did not show up

11    for mental health appointments at the clinic, the ALJ's reasons were relevant and

12    supported by the record.  The Court finds no error in the ALJ's handling of Mr.

13    Salzman's statement.

14    Therefore, the Court does not find reversible error based on the ALJ's

15    treatment of medical opinion testimony.

16    ***Plaintiff's Subjective Symptom Testimony***

17    The ALJ found that Plaintiff's medically determinable impairments could

18    reasonably be expected to cause some of his alleged symptoms of anxiety,

19    depression, and pain due to knee issues and flat feet.  AR 22.  However, the ALJ

20    further found that Plaintiff's statements regarding the intensity, persistence, and

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record, which reflects unremarkable objective findings over time and a level of functioning that is not as limited as Plaintiff alleges.  AR 22–23.

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony as inconsistent with treatment records because treatment records support that Plaintiff often exhibited depressed and/or anxious mood or affect, AR 479, 495, 517, 520, 523, and 593, demonstrated limited judgment, AR 479, 495, and showed impaired memory functions, AR 351, 495, and 594.  ECF No. 19 at 6.  Plaintiff also argues that the ALJ erred in rejecting Plaintiff's subjective symptoms testimony as inconsistent with his daily activities because Plaintiff's work history included over 20 jobs, with the longest held job lasting only approximately six months.  *Id.* at 7 (citing AR 590).  Moreover, Plaintiff argues that the vocational expert confirmed that his rage symptoms would result in termination from a job.  *Id.* (citing AR 57–60).

The Commissioner responds that treatment records did not corroborate the significant mental health symptoms that Plaintiff alleged.  ECF No. 18 at 4.  Although Plaintiff alleged significant memory issues, the ALJ cited evidence in the record that supported intact memory.  *Id.* (citing AR 365, 367, 374, 416, 423, 429, 432, 435, 437, 455, 461, 479, 508, and 512).  The Commissioner also asserts that the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

ALJ cited to treatment notes and Plaintiff's self-reports that contradicted Plaintiff's alleged difficulty interacting with others. *Id.* at 4–5 (citing AR 20, 22, 416, 420, and 479 and citing AR 507, 512, 516, 523, 530, 536, and 543 for other similar findings in the record).

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

1      Reviewing the ALJ's decision, the Court identifies several clear, specific, and

2    convincing reasons, in the context of the full record, for not fully accepting

3    Plaintiff's statements concerning the intensity, persistence, and limiting effects of his

4    claimed symptoms and their effect on his ability to work.  AR 22–24.  The ALJ cited

5    to numerous treatment and examination records, which included Plaintiff's past

6    contemporaneous statements to providers, that were inconsistent with Plaintiff's

7    self-described intensity of his anger issues and depression and anxiety symptoms.

8    AR 22–25.  The ALJ also noted Plaintiff's course of treatment, ability to live

9    independently, care for a pet dog, ride the bus and shop in stores independently, as

10   inconsistent with the degree of limitation that Plaintiff alleged at the hearing.   AR

11   22–23.  Moreover, the ALJ noted that Plaintiff's "weak work history" preceded his

12   amended onset date by several years and found that fact to undermine Plaintiff's

13   claim that his current medical conditions inhibit his ability to work.  AR 23.

14      Accordingly, in formulating the RFC, Judge Shumway reasonably accepted

15   Plaintiff's statements to the extent that they were consistent with the objective

16   medical and other evidence by incorporating several nonexertional limitations

17   consisting of limiting Plaintiff to simple, routine tasks consistent with a reasoning

18   level of two or less on the U.S. Department of Labor's six-level General Educational

19   Development ("GED") scale and superficial contact with supervisors, coworkers,

20   and the public.  *See* AR 22; *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)

21

(explaining the Department of Labor's GED scale, which includes the reasoning ability required of a worker at each level for satisfactory job performance).  The Court does not find error on this basis.

### *Lay Witness Testimony*

The ALJ gave the statements of Plaintiff's parents little weight because, although Plaintiff's parents "have known the claimant for his entire life[, . . .] they did not indicate how often they spend time with the claimant."  AR 30 (citing AR 342–43).  The ALJ further noted that Plaintiff's parents' statements were not consistent with or supported by Plaintiff's self-reports of functioning.  AR 27–28.  The ALJ gave as an example Plaintiff's parents' report that Plaintiff self-medicates his subjective physical pain with marijuana, but the ALJ noted that that Plaintiff had told his treatment provider that he has no physical pain outside of intermittent pain and only after prolonged walking or standing.  AR 28 (citing AR 34).

Plaintiff argues that the ALJ erroneously discredited the lay opinions of Plaintiff's parents on the reasoning that the opinions were inconsistent with Plaintiff's own testimony, when, Plaintiff asserts, his parents' statements and his self-report are generally consistent with and support one another.  ECF Nos. 16 at 19; 19 at 8.

The Commissioner responds that Plaintiff's parents' statements that Plaintiff had physical disabilities that caused him to be in pain "most of the time" were

1    contradicted by treatment notes indicating that Plaintiff denied pain and

2    musculoskeletal symptoms.  ECF No. 18 at 19–20 (citing AR 28, 342, 356, 365,

3    366, 423, 428, 429, and 430).  The Commissioner further argues that any error with

4    respect to discounting Plaintiff's parents' statements is harmless because the ALJ

5    gave clear and convincing reasons for rejecting Plaintiff's subjective complaints,

6    which "generally mirror" Plaintiff's parents' allegations of disability in their

7    statement.  *Id.* at 20.

8         An ALJ must consider the statements of "non-medical sources" including

9    spouses, parents, and other relatives in determining the severity of a claimant's

10    symptoms.  20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  Statements from lay-

11    witness sources are competent evidence and cannot be disregarded without

12    comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993).  To reject lay

13    witness testimony, the ALJ must provide "reasons that are germane to each witness."

14    *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (internal quotation omitted).

15         Having reviewed the treatment notes in the record, the Court finds some

16    contradiction that confirms one of the reasons given by the ALJ in discounting

17    Plaintiff's parents' statements.  Specifically, Plaintiff's parents asserted that Plaintiff

18    is in pain "most of the time," while treatment notes from 2016 and 2017 indicate that

19    Plaintiff's knee and flatfoot pain is intermittent, and that Plaintiff reported having no

20    pain at the time of the visits.  AR 365–66, 428–29.  The Court finds that the minor

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

1    inconsistency still surpasses the "germane reason" threshold.  *See Rounds*, 807 F.3d

2    at 1007.  Moreover, the ALJ also offered as a reason that Plaintiff's parents did not

3    indicate how often they spend time with the claimant.  Given that the record

4    indicates that Plaintiff was not living with his parents for approximately three years

5    before his hearing, the Court also finds the potential that Plaintiff's parents were not

6    aware of Plaintiff's daily functioning relevant to his ability to work to be a germane

7    reason for discounting their statements.  Finally, the Court finds that any legal

8    deficiency in the ALJ's reasoning for discounting Plaintiff's parents' statements

9    would be harmless error because the ALJ validly discounted Plaintiff's subjective

10    complaints and the opinions of the treating or examining medical sources.  *See*

11    *Robbins v. Comm'r*, 466 F.3d 880, 885 (9th Cir. 2006) (holding that an error is

12    harmless if it was "inconsequential to the ultimate nondisability determination.").

13    Therefore, the Court finds no reversible error in the ALJ's handling of lay witness

14    statements.

15        ***Step Five Evaluation***

16        At step five in the sequential evaluation, the ALJ found that Plaintiff has a

17    high school education, can communicate in English, and that "[t]ransferability of job

18    skills is not an issue because the claimant does not have past relevant work."  AR 28.

19    As a result, the ALJ found that there are jobs that exist in significant numbers in the

20

21

1    national economy that Plaintiff could perform considering his age, education, work

2    experience, and RFC.  AR 28–29.

3        Plaintiff argues that the ALJ's Step Five assessment was erroneous because

4    the ALJ did not include all of Plaintiff's limitations in the hypothetical scenarios that

5    the ALJ posed to the vocational expert.  ECF No. 19 at 8–9.  The Commissioner

6    argues that the ALJ appropriately included all of the limitations that were supported

7    by the record in the RFC, and a person with the RFC as formulated by the ALJ could

8    perform the jobs that the ALJ identified at step five.  ECF No. 18 at 21.

9        An ALJ is not required to accept as true limitations alleged by a claimant and

10   may decline to include those limitations in the vocational expert's hypothetical if

11   they are not supported by sufficient evidence.  *See Bayliss v. Barnhart*, 427 F.3d

12   1211, 1217–18 (9th Cir. 2005).  Plaintiff's argument that the ALJ erred in the

13   limitations posed to the vocational expert derives from Plaintiff's challenges to the

14   medical source opinions and subjective symptom testimony that the ALJ discounted

15   in determining Plaintiff's RFC.  Having determined that the ALJ discounted certain

16   evidence of Plaintiff's limitations for legally permissible reasons, the Court finds no

17   error with respect to the ALJ's step-five analysis.

18       Having addressed all issues raised by the parties' cross-motions for summary

19   judgment, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 16,

20   and grants Defendant Commissioner's Motion for Summary Judgment, ECF No. 18.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3.    Judgment shall be entered in Defendant's favor.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close the file** in this case.

**DATED** April 22, 2021.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge